```
 1                    UNITED STATES BANKRUPTCY COURT
                       WESTERN DISTRICT OF VIRGINIA
 2                         Harrisonburg Division

 3

 4   IN RE:   DIANA L. SWANER              10-50225-13

 5

 6

 7

 8

 9                       TRANSCRIPT OF HEARING
                  BEFORE THE HONORABLE ROSS W. KRUMM
10                  UNITED STATES BANKRUPTCY JUDGE

11

12

13                          AUGUST 3, 2011
                              10:00 a.m.
14

15

16
     FOR THE DEBTOR:             Chung & Press, PC
17                               DANIEL M. PRESS
                                 6718 Whittier Avenue
18                               McLean, Virginia  22101

19   CHAPTER 13 TRUSTEE:         Office of the Chapter 13 Trustee
                                 ANGELA SCOLFORO
20                               401 East Market Street, Suite 202
                                 Charlottesville, Virginia  22902
21
     COURT REPORTER:             Reporting Service
22                               MELISSA STACY
                                 57 South Main Street, Suite 202
23                               Harrisonburg, Virginia  22801

24
             Proceedings recorded by electronic sound recording.
25                 Transcript produced by transcription.
```

                                                                            2

1                              **INDEX**

2

3  SHOW CAUSE HEARING                                              3 - 14

4

1  MS. SCOLFORO: Your Honor, the next three cases
2  are cases that Mr. Press took over from Deanna Tubant. In the
3  Swaner case, Your Honor, this case was filed in February 2010,
4  so we're at about a year and a half. Mr. Press took over the
5  case by order entered October 7th, 2010. The plan proposes
6  $487 a month for 60 months, plus funds on hand. It will pay
7  zero to the unsecured creditors. There is a wage order. It
8  was filed, amended. It has been sending me $27 a week even
9  though it says $112 a week. The debtor informs me this morning
10 that as of her last two checks it is now at the $112 week
11 level, but there is a default because of that. There are still
12 items on the Trustee's report, that report which was filed in
13 March of 2010 that were outstanding. I reported, Your Honor,
14 when we were here in May that I was not getting progress, that
15 this case was quite old. I sent a long email to Mr. Press at
16 that time itemizing all that was needed and got no response.
17 Your order required him to file an amended plan and provide all
18 items on the Trustee's report by June 30th. On June 30th he
19 did file this plan that proposes zero to the unsecured
20 creditors. He did not provide my office with any
21 documentation. I sent an email last week reciting again all
22 that was needed and that I had not gotten the information.
23 Today he brought to me in court copies of pay stubs from the
24 debtor. I will point out, Your Honor, this is the first time
25 I've had pay stubs in this case at all. I have not had a

1 chance to review those pay stubs. I am still missing some
2 items on the Trustee's report. One of them is the tax assessed
3 value for the home that was requested at the Trustee's report.
4 Counsel informed me this morning that if I go look at the
5 adversary he filed I will find it there. I have not had a
6 chance to go look. I do not have the car insurance. Counsel
7 informed me this morning that debtor is no longer driving a
8 vehicle that she insures. I have not had a chance to review
9 the pay stubs, Your Honor. I have a good faith objection
10 pending because this and several of Mr. Press' cases he is
11 taking advantage of the Chapter 13 provision that allows him to
12 strip off a second mortgage on the house. He has done that in
13 this case. So the debtor has benefitted dramatically from that
14 strip off and yet proposes a 0% plan. I would submit to Your
15 Honor that what he's really trying to do is file Chapter 7's
16 and strip off mortgages. If he was in a 7 he couldn't strip
17 the mortgage. He's in a 13 which is designed to pay creditors,
18 but he's not proposing to pay creditors at all. The June plan
19 actually funds $91 towards the unsecured claims even though as
20 I said the debtor was able to strip off the second mortgage,
21 which is a significant benefit to the debtor. So I am not in a
22 position to recommend confirmation at this time. Even after I
23 review the documentation I don't think I will be recommending
24 confirmation of a plan that gives so much benefit to the debtor
25 and so little benefit to the creditors.

1  COURT: Okay.

2  MR. PRESS: Your Honor, that's a lot to respond
3  to. Let me, I think I took notes and let me just start with
4  working up from the bottom. Counsel referred to a second
5  mortgage having been stripped. I don't know where she gets
6  that. There is no second mortgage in this case. In fact
7  there's no mortgage in this case. Apparently she hasn't read
8  the plan, she hasn't looked at the schedules.

9  COURT: Well you haven't given her the
10 documentation.

11 MR. PRESS: I have given her the documentation,
12 Your Honor. That was ...

13 COURT: Not acceptable, sir, for you to refer
14 her to an AP to get the documentation. Now if you can show me
15 that you have given her the documentation then we'll address
16 other issues. But that's the first thing I want to do is,
17 there's an order dated that says you were supposed to give her
18 this documentation by 6/30. She says she hasn't got it by
19 6/30.

20 MR. PRESS: Your Honor, I emailed her. I
21 emailed her the pay stubs that I handed her today on June 30th.
22 I emailed her the tax assessment on June 30th. I spoke with
23 her ...

24 COURT: Did you bring your emails?
25 MR. PRESS: I don't have the emails with me,

1  Your Honor.
2              COURT:  That's not going to help you very much
3  today, is it?  She's saying that she didn't get it until today
4  and you brought it today.
5              MR. PRESS:  And I spoke with her yesterday which
6  is the first time that I found out that she didn't get it.
7              COURT:  Well if you're taking the position that
8  you gave her these documents in a timely fashion I need you to
9  show me.
10             MR. PRESS:  I will do that, Your Honor.
11             COURT:  You should be prepared today to show me.
12             MR. PRESS:  Put me under oath, I'll testify.
13             COURT:  She has taken this position.  You knew
14 that it was her position.
15             MR. PRESS:  As of yesterday at about 5:30 I knew
16 it was her position.
17             COURT:  Sure.  And what you're telling me today
18 is well I did that in accordance with the order, and yet you're
19 not coming forward to indicate that to the Court other than to
20 stand at the podium and say I emailed her.  It would be pretty
21 easy for you to bring the emails.
22             MR. PRESS:  Your Honor, if I really understood
23 that she was going to come in here and represent to the Court
24 that I did not send that and that, I mean I would have printed
25 out the ...

1   COURT:  She wasn't doing that.  She had already
2 told you at least as of yesterday I didn't get them, I don't
3 have them.
4   MR. PRESS:  Yes, Your Honor.  And I ...
5   COURT:  And you're saying I sent them.  And I'm
6 saying it takes more than that to satisfy me.
7   MR. PRESS:  I apologize, Your Honor.  I don't
8 have it with me today.  I don't have the email that I sent her
9 today.  I did give her the documents.  She has them now.
10   COURT:  So is it your representation here today
11 as an officer of this court that you sent her those emails on
12 6/30 which fully complied with this Court's order?
13   MR. PRESS:  Yes, Your Honor.
14   COURT:  Okay.  We'll carry this matter over and
15 we're going to have a hearing on that.
16   MR. PRESS:  That's fine, Your Honor.
17   COURT:  Okay.  And now it's your representation
18 here today as an officer of the court that you have provided
19 her with all of the documentation, notwithstanding the date
20 upon which it was submitted?
21   MR. PRESS:  Your Honor, I've provided her the
22 pay stubs again today.  I provided her the tax assessment in
23 that email, and it was filed in the motion to avoid the lien.
24 I did not provide her proof of insurance because there is no
25 car.

8

1         COURT: Did you tell her that?

2         MR. PRESS: I did.

3         COURT: When did you tell her that?

4         MR. PRESS: I told her that on the phone in
5 June.

6         COURT: Go ahead.

7         MR. PRESS: My understanding is that is the
8 extent of the documentation that she needs.

9         COURT: Well didn't we do an order that said
10 what you had to provide?

11         MR. PRESS: There was no order with a specific
12 list of documents, Your Honor. It was the items on the
13 Trustee's report.

14         COURT: Items on the trustee's report. Let's
15 have you pull out your copy of the items on the trustee's
16 report which were the subject of the June 30th order and let's
17 go through them so that we're clear that you're making a
18 representation as an officer of this court that you've complied
19 on the record.

20         MR. PRESS: In fact, Your Honor, I'll note that
21 in an email that she sent me on July 28th she notes that I
22 "provided" pay stubs. The '04 to '07 taxes, it says file
23 those. I believe I sent her copies of those although it
24 doesn't indicate that she needed copies of them, but I did
25 provide them.

9

1  COURT: So those have been provided?
2  MR. PRESS: Yes. And they've been filed and the
3  IRS ...
4  COURT: And you're reading from the Trustee's
5  report that is in your possession?
6  MR. PRESS: I'm reading from an email that she
7  sent which itemized the ...
8  COURT: Trustee's report, pull it out.
9  MR. PRESS: I don't have a copy of the Trustee's
10 report with me, Your Honor. What I have is an email where she
11 itemized the items in the Trustee's report.
12 COURT: Go ahead.
13 MR. PRESS: All right. The list of unsatisfied
14 Trustee's report ...
15 COURT: Read them off into the record and tell
16 me whether or not you have provided them and when you provided
17 them.
18 MR. PRESS: Yes, Your Honor. The first one
19 listed here is 3J plan not proposed in good faith. That's a
20 legal argument. 3K Chapter 7 test problem, real estate equity
21 $10,470. As I explained to her, the Court has already stripped
22 off liens on this property, so there's obviously no equity in
23 the property.
24 COURT: Well you just told me there was no strip
25 off. There was no mortgage involved.

1  MR. PRESS: There's no mortgage. It's judgment
2  liens. Judgment liens and tax liens.
3  COURT: Okay.
4  MR. PRESS: The tax liens eat up all the equity
5  in the property. Plan not proposed, next one 3Q, not proposed
6  in good faith, $0 to unsecured. That's the same as the 3J
7  issue, it's a legal issue. 3T, failed disposable income test,
8  stubs show $400 a month more. She just represented to you that
9  what I handed her today was the first pay stub she received in
10  the case I'll point out. 3U, plan is under-funded, that's not
11  true. She represented there is money going to unsecureds here,
12  not much, so it's not underfunded. 4A provided, says provided
13  pay stubs March April. My read of that, at least until the
14  phone call yesterday evening, was that she acknowledged that
15  she had received the pay stubs, that they were in fact
16  provided.
17  COURT: Where is your read of that? It said she
18  needed March and April pay stubs and you were supposed to give
19  them to her by the 30th of June.
20  MR. PRESS: No, it says provided, past tense.
21  My understanding is that's an acknowledgment, my understanding
22  in reading this was that that was an acknowledgment that she
23  had received them.
24  COURT: Very well.
25  MR. PRESS: That's still my understanding. File

1  taxes within thirty days.  Those taxes were filed.  CTA, I
2  don't understand what CTA means but it says personal property
3  or real estate.  She's been provided the real estate tax
4  assessment.
5           COURT:  When was that provided?
6           MR. PRESS:  That was provided on June 30th.  4F
7  says car insurance, there is no car.
8           COURT:  And when did you apprise the Trustee of
9  that matter?
10          MR. PRESS:  On the phone call on I believe it
11 was June 30th.  It was about the same time I filed that plan.
12 Approximately the same day.
13          COURT:  Go ahead.
14          MR. PRESS:  And then it says amend C, exceed
15 limits of 344, prior homestead deeds claimed, 5423, may not use
16 344 now.  I had a discussion with her about that at that time
17 also to point out that the 344 exemptions claimed now are on
18 the same property that they were claimed on on the prior
19 homestead deed.  And then 7I and J are amend I and J, feasible
20 budget.  That's been done.
21          COURT:  And when was that done?
22          MR. PRESS:  That was, the amended I and J I
23 believe were filed in the same day as the amended plan.
24          COURT:  And when was that?
25          MR. PRESS:  June 30th.  So I believe I have

1  complied.
2            COURT:  You read all of the items on the
3  Trustee's report that you have there via that email into the
4  record?
5            MR. PRESS:  Yes.  That is what she represented
6  on July 28th was unsatisfied Trustee's report items.
7            COURT:  Okay.  Good.
8            MR. PRESS:  And I believe I have satisfied them.
9            COURT:  All right, sir, that's fine.  We will
10 continue the show cause hearing for any evidence that the
11 parties, further evidence that the parties wish to submit based
12 upon what you have read into the record here today and we will
13 take that to the October 5th date at 10 o'clock.  We'll put
14 that at the end of the docket if the parties need to put on any
15 evidence at that point in time.  Now, what is the default in
16 payments at this point in time from the Trustee's office?
17           MS. SCOLFOROFORO:  $457, Your Honor.  Now that's
18 under the original plan.  Oh no, that is under the modified
19 plan.
20           MR. PRESS:  Your Honor ...
21           COURT:  I'm sorry, just a moment.  Say that
22 again, please.
23           MS. SCOLFORO:  $457.
24           COURT:  As of today?
25           MS. SCOLFORO:  As of today. The June plan

1 proposed $1,892 funds on hand, then $487 beginning in July.  We
2 got some of the July payment but she is short by $457 for the
3 July payment.
4           MR. PRESS:  If I may on that, Your Honor.  There
5 was a wage order submitted concurrently with this June 30th
6 amended plan.  That wage order was entered by the Court
7 probably a couple of days after that.  Was mailed to the
8 employer, and the employer two paychecks ago has started to
9 take out this $112.  So during July, which is what it says, the
10 new wage order, the new plan payment kicked in.  So I'm, you
11 know, it started in July.  Now if the Trustee believes that
12 there's a default in plan payments, number one I think we
13 should wait for the checks from the employer that were withheld
14 in the latter half of July to arrive in the Trustee's system
15 and then if there is a deficiency I think Ms. Swaner can make
16 that up.  But it wasn't supposed to start until July, and it in
17 fact did start in July.
18           COURT:  Anything further from the Trustee at
19 this point?
20           MS. SCOLFORO:  Yes, Your Honor.  I feel
21 compelled to clarify for the record that I was in Montana from
22 June 21st until July 3rd.  I can assure Your Honor I had no
23 conversation with Mr. Press on or about June 30th.  It was
24 quite impossible.  I did check my email during that time but I
25 had no conversation with Mr. Press and I was in Montana.

14

1  MR. PRESS: And, Your Honor, I said on or about
2  June 30th. I do not have a record with me.
3  COURT: We'll take all of that up if there is
4  any evidence to be offered at the show cause hearing on the 5th
5  of October. I think what we'll do on this is the Trustee is
6  not prepared to go forward with this case at this point in
7  time. Mr. Press will do an order that carries the confirmation
8  of the plan to October the 5th at 10:00 in paragraph 1. He'll
9  check paragraph 3 for October the 5th. Is there anything the
10 Trustee at this point in time wishes to ask for in paragraph 9?
11 MS. SCOLFORO: No, Your Honor.
12 COURT: We'll go forward on that basis. It will
13 be the last case on the docket on the 10 o'clock docket for
14 October the 5th. If you all can't get together on these things
15 and start adequately communicating then I'm going to hear these
16 cases and we're going to determine whether there is a basis for
17 dismissal for failure of the debtor to comply with the
18 requirements necessary to position the debtor for confirmation.
19 MR. PRESS: I understand, Your Honor. Thank
20 you.
21 COURT: Okay. We'll have a record of this
22 proceeding here this morning, please, typed up and filed with
23 the Court.
24
25

15

**CERTIFICATE**

I certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above entitled matter.

/S/Melissa Stacy                              August 10, 2011
Melissa Stacy                                           Date
Court Reporter